## SANDS REED *vs.* THE TOWN OF CORNWALL.

A turnpike company organized in the year 1806, under a charter which made no location of its road, took, without any record of the laying out of the road, a previously existing highway into its exclusive control, and from that time till the year 1846 treated it as a part of its road, keeping it in repair, establishing a toll gate upon it, and taking toll from travelers, all which was done without objection from the town. In 1846, the turnpike company abandoned the road, removed the toll gate, and ceased to keep the road in repair; from

which time to 1854 the town made what repairs were necessary upon it, and the road continued to be used as a public highway and was necessary to the public convenience. In 1854, a traveler was injured by means of a defect in the road and brought an action against the town for damages in which he recovered a verdict. Held, in granting the defendants a new trial,

1. That the charter of the turnpike company was not void because it did not locate the road.

2. That regarding the occupation of the highway by the turnpike company as a location of its road over the highway and as an assumption of the highway as a part of its road, (which was rather a question of fact than of law, but as to which no question was made in the case,) it followed that the turnpike company became burdened with the duty of keeping the road in repair, and the town was exonerated from that duty.

3. That the duty thus imposed on the turnpike company did not cease when the road was abandoned by it, but continued until the company was dissolved, or at least until the abandonment had continued so long as to furnish a presumption of the legal dissolution of the company.

4. That the town was not estopped by reason of its having repaired the road, from denying its liability for an injury occasioned by a defect therein.

5. That, under the statute concerning highways and bridges, a liability to keep the road in repair could not exist in the town and in the turnpike company at the same time.

ACTION upon the statute for an injury from a defective bridge.

The plaintiff, upon the trial to the jury, claimed to have proved that in November, 1854, while he was traveling in Cornwall, upon a road leading from Cornwall Bridge to West Cornwall, his horse fell through a bridge and was injured; that the bridge then was, and long had been defective and dangerous to travelers, which fact was well known to the town of Cornwall; and that the road was necessary for the public travel in that town, and was the only one in Cornwall between Cornwall Bridge and West Cornwall.

It was admitted that before the year 1806, there was on the same ground where this injury happened, an old road between Cornwall Bridge and West Cornwall, which road was a public highway, maintained and kept in repair by the town of Cornwall; but the defendants claimed that in 1806, this road became and had ever since continued to be, a part of the road of the Warren Turnpike Company, and that the Warren Turnpike Company was alone liable to keep it in

repair, and was alone responsible for injuries occasioned by defects in it. In support of this claim the defendants offered in evidence the charter of the turnpike company, granted in 1806, and the amendments thereto, made in 1809, 1814 and 1823, and a record book, showing the organization of the company in 1806; but the defendants did not offer in evidence any survey or any record of the laying out or locating of any road by the company. The defendants further offered evidence to prove, and claimed to have proved, that the turnpike company had repaired the road in question, from the year 1806 to the year 1846; that it was part of a road upon which the company had placed gates at which they collected toll of travelers; and that the road was used and treated by the company in all respects as it would have been had it been their own road.

The plaintiff claimed, and offered evidence to prove that in 1846 the turnpike company ceased to repair the road, took off their gates from it, and thenceforth abandoned the road entirely; and that the town of Cornwall thereupon, from that time to the time of the accident, made repairs upon the road annually. The defendants claimed and offered evidence to prove, that they had never in letting their roads to be repaired for a term of years, embraced this road in the arrangement.

There was no evidence tending to show any dissolution of the Warren Turnpike Company, except what may be inferable from the facts above stated.

Upon the facts and claims above set forth the defendants requested the court to charge the jury that the turnpike company was alone liable to repair the road and to pay damages for injuries caused by defects therein; and that the defendants were entitled to a verdict.

The court did not so charge the jury, but charged them in substance, as follows:—" It is admitted that there was an old road belonging to the town of Cornwall and which that town was liable to repair, at the place where the injury to the plaintiff occurred. If the Warren Turnpike Company however used this road as a part of its road, repaired it

and collected toll of travelers upon it, as the defendants claim, then the liability of the town to repair the road and to pay damages for injuries caused by defects therein, was suspended while the turnpike company continued to do those acts or to exercise over the road any act by virtue of its corporate rights. But if you find, as the plaintiff claims, that the turnpike company ceased to perform all of those acts and abandoned the road, that this road is necessary for the public travel in Cornwall, that since its abandonment by the turnpike company the town has made the necessary repairs thereon, and that the same has been all the time used as a public highway, then the defendants must be held to have adopted the road, and they are bound to keep it in repair and are liable for injuries arising from their negligence in this respect."

The jury returned a verdict for the plaintiff; and thereupon the defendants filed a motion for a new trial for error in the charge of the court.

*Wheaton* and *Belden*, for the defendants.

1. The statute makes it the duty of towns to keep in repair all necessary roads and bridges within the limits of the town, except where the duty belongs to some particular person or corporation. Rev. Stat., tit. 24, § 1. The law does not intend that the duty of repairing roads shall rest at the same time on a town and on a turnpike company. *Sherwood* v. *Weston*, 18 Conn., 32, 51. At the time of the injury it was the duty of the Warren Turnpike Company to repair this road and they alone are liable to the plaintiff. They were incorporated in 1806; and, by their acts, with the consent of the legislature and the town, they adopted the road as fully as if they had originally laid it out. *Bulkley* v. *Derby Fishing Co.*, 2 Conn., 252. *Goshen and Sharon Turnpike Co.* v. *Sears*, 7 id., 86, 93. The court erred in confining the liability of the company to the period during which the company chose to exercise their corporate rights. The jury should have been instructed that the liability of the town to repair the road was suspended during the existence

of the corporation. *Sherwood* v. *Weston*, supra. But the jury were instructed, substantially, that a turnpike company could at any time discharge itself from all liability imposed by its charter, by ceasing to exercise acts under it. A corporation cannot by its own neglect of duty exonerate itself from liability. *Evarts* v. *Killingworth*, 20 Conn., 447.

2. A corporation can be dissolved only by the death of all its members, by surrendering its franchise to the legislature, or by the abuse of its corporate powers. 1 Swift Dig., 72. A corporation cannot be dissolved for abuse of its powers except by a judicial decision upon a suit instituted for that purpose. *Enfield Toll Bridge Co.* v. *Conn. River Co.*, 7 Conn., 28. *Kellogg* v. *Union Co.*, 12 id., 7. *Pearce* v. *Olney*, 20 id., 544. The statute of 1854 prescribes the way in which a turnpike company may give up its road; that statute is useless if such a company may give it up by ceasing to repair it.

3. The town could not adopt the road merely by working on it and repairing it, so long as it belonged to the turnpike company. The town was not estopped from showing that it was the duty of the turnpike company to keep the road in repair. *Sherwood* v. *Weston*, supra. *Marlborough* v. *Sisson*, 23 Conn., 44. The court ought to have charged the jury that it was a question of fact under all the circumstances and in view of all the evidence, whether the town intended to adopt the road; and ought not to have charged them, as a matter of law, that the town had adopted it.

4. The statute of 1856 shows that the legislature did not consider towns as having been liable to repair turnpike roads prior to the passage of that statute. Acts of 1856, p. 77.

*Dutton* and *Carter*, for the plaintiff.

1. There was an old town highway at the place in question, before the turnpike company was incorporated. Therefore, if the liability of the town was suspended so long as the company used the road, nevertheless when the company

abandoned the road and the town again opened it, the liability of the town revived.

2. The turnpike company never took the road by process of law, never paid anything for it, never made a laying-out of it, never had authority by their charter to take property by force and assess damages, and never pretended to do so. 2 Private Acts, 1479. They simply used it by tacit consent. The records show no more and the case shows no more. The burden of showing more, if it could be done, was on the defendants.

3. The town, having resumed and used and repaired the road from 1846 until the time of the accident in 1854, should be estopped from denying their liability. The turnpike company do not complain of their acts, and certainly the defendants cannot themselves complain of them. The plaintiff was an innocent man, and ought not to be turned round by the town to seek redress from a defunct corporation.

4. Neither the charter nor any statute imposed any obligation upon the turnpike company to keep up that road, or even to have their turnpike in that or any particular place. No statute prohibited them from giving up, or the town from assuming, the road. Recent statutes have provided that this may be done in certain modes, but no statute prohibits all other modes. If the company had ever owned this road, which they never did, the town could accept an abandonment or a dedication of it by the company, in the same manner as it could accept a dedication of a highway by a natural person; and if such a dedication had been made by an individual and accepted by the town, the highway so dedicated would clearly have been a public highway so long as the town had continued to use and repair it, and that without reference to the question whether, at a particular point of time, the person who had made the dedication was dead or alive. *Noyes* v. *Ward*, 19 Conn., 250.

5. This having been an ancient highway within fifteen years prior to the first of June, 1809, must ever remain so; and no use of it by a corporation or natural person would destroy its character as such.

6. In the language of the court in *Drury* v. *Worcester*, 21 Pick., 49, " whenever by positive act or tacit permission they suffer a highway to be opened to public use and to be actually used by the public, the town becomes responsible for its safe condition,"—or, in the language of the same court in *Bliss* v. *Deerfield*, 13 Pick., 108, " this is a permission and invitation to travelers to use it, and then the liability for damages attaches." In this case the town invited travelers to use this road ; if they had not, this accident would not have happened.

7. The town and a corporation may be liable at the same time. *Commonwealth* v. *Petersham*, 4 Pick., 119.

HINMAN, J. This was an action on the statute for an injury occasioned by a defective bridge, and the principal question was, whether the bridge was one which the defendant town was bound by law to maintain and keep in repair. There was no doubt that the bridge belonged to the defendants to keep in repair, unless it belonged to and was a part of the Warren Turnpike Company's road, and belonged to the turnpike company to maintain ; in which case it must of course be conceded that the town is not liable for an injury occasioned by its being out of repair, because our statute makes towns liable only in cases where no other person or corporation is liable to maintain and repair the road or bridge by the defect of which an injury is sustained. Rev. Stat., tit. 24, § 1. *Sherwood* v. *Weston*, 18 Conn., 32.

It appeared that there was an ancient road at the place in question, which belonged to the town to maintain, and had been maintained by it up to 1806, but in that year the Warren Turnpike Company was chartered and organized, and from that time for a period of forty years that corporation repaired it and maintained toll gates upon it and treated it in all respects as a part of their road. In 1846 the turnpike company ceased to repair the road, took off all its gates therefrom, and from that time entirely abandoned it. It does not explicitly appear from the motion, but we suppose it to be the fact, that the only road in Cornwall ever main-

tained by the turnpike company was this old highway; and as the charter of the company does not locate the road which the corporation were to build and maintain, and there did not appear to have been any survey or location of a turnpike by the corporation, unless it be assumed that the organization of the company, together with the taking this old highway into its control as a turnpike, was such a location, it might perhaps have been a proper question for the jury to pass upon, whether these circumstances, with the continued use of this old highway as a turnpike for forty years, was or was not a location of the turnpike under the charter, so as to make the corporation liable to maintain it. This question does not appear to have been made. The court however told the jury that if they found that the turnpike company used the road as a part of their road, repaired it, and collected toll of travelers upon it, the liability of the town to repair it and pay damages for injuries for defects therein, was suspended while the turnpike company continued to do these acts, or to exercise over it any act by virtue of their corporate rights; but that if they found that the turnpike company ceased to perform all of these acts, and abandoned the road, and further found that the road was necessary for the public travel in Cornwall, and since its abandonment by the turnpike company the town had made the necessary repairs thereon, and the same had been all the time used as a public highway, then the defendants had adopted the road and were liable to keep it in repair, and were also liable for any injury arising from their negligence in this respect.

Now whether it be assumed that the charge in respect to the liability of the turnpike company, while it continued to maintain the road as a part of its turnpike, is correct, or whether the proper course would have been to submit this as a question of fact to the jury, to say whether the acts of the corporation under their charter were not a sufficient location of their turnpike road over this old highway, so as to exonerate the town from liability to repair, &c., can make no difference, for if either course was proper, then, as it might have been found and probably would have been found that

the turnpike company was once liable to repair this road, the question fairly arises whether this liability ceased when the turnpike company ceased to repair the road and abandoned it in the mode stated to the jury in the charge. The charter, as it appears in the private statutes, (2 Vol., p. 1479,) is very brief, and is probably susceptible of explanation by referring to the petition upon which it appears to have been granted, together with the action of the legislature upon it. A reference to the petition would probably show a location of the road by the action of the legislature ; and perhaps the power of the corporation to surrender the road to the public by merely ceasing to repair and abandoning the taking of toll might be shown. If the application was for a mere license to the petitioners to take an old highway into their control, and to be allowed to erect and maintain toll gates upon it for so long a period as they chose to keep it in repair, the charge might be correct. It has been suggested that some of the old turnpike charters were of this description. This, however, does not appear to be so upon the face of the resolution merely ; and we have nothing else before us. If it is not a mere license of the sort indicated, it of course amounts to a permanent charter of a permanent corporation, which alone had no power to dissolve itself.

The circumstance that it cannot be determined by a mere inspection of the resolution where the road of the corporation was to be built or established, does not render the charter void. It has not been claimed that the legislature had not the power to charter a company with authority to build and maintain a turnpike road, leaving the corporation to locate it in some suitable place for the accommodation of the public. It is true this is not often done, in respect to turnpikes. But towns, cities and boroughs, have power to make ordinary highways and streets, and there can be no objection in principle to granting the same power to a turnpike corporation which does not apply to the authority which is exercised over this subject by these municipal corporations.

A turnpike located, built, and opened for travel, by a corporation thus chartered, would possess all the incidents, in

respect to its being a public way, of any other turnpike; and the corporation would be under an equal liability to maintain and keep it in repair, and to pay damages for any negligence in this respect, which any other turnpike company is under in respect to its road. A reference to our private statutes will show that many of the old charters of turnpike companies were very brief, some of them perhaps as brief and indefinite as this, but no one has ever claimed them to be void on this account. Assuming then, as we must in this case, that the place in question was once a turnpike, and that the corporation liable by law to keep it in good repair and to pay damages for its neglect to do so, has never been in any way dissolved, or its former liability shifted from it, the same liability must of necessity still continue; and as our statute makes the towns liable only in case there is no liability on any other person or corporation, it follows of course that the charge was wrong in making the liability of the turnpike company to depend upon its continuing to keep the road in repair and keep up its gates, &c.

It was claimed that the late repairs of the road by the town operated to estop the town from claiming that it was not liable to maintain the road. We do not think so, for so long as there is a liability upon the turnpike corporation, there can, by our statute, be none upon the town. What the effect of a continued abandonment of all their corporate rights by the corporation for a long period might be, it is unnecessary to consider. If the abandonment had been for a period sufficient to justify the presumption that the charter had, in some way, been taken away, or ceased to exist, the question no doubt would be presented in a more favorable aspect for the plaintiff. But a mere abandonment of corporate franchises for a few years is obviously insufficient to raise any question of this sort. Indeed it is not raised here, but the claim is that there may be a liability to repair and pay damages for injuries occasioned by non-repair against the corporation and the town at the same time, and cases are cited which are supposed to sanction this claim. It is sufficient however to say, in answer to this claim, that our prac-

tice, founded upon our statute, has always been opposed to this view.

Again, it is said that the turnpike company, by abandoning their road and leaving it open for travel, dedicated it to the public as a highway, and the town, by its repairs, accepted it, and thus it became an ordinary highway.

There is no doubt that it is a highway which the town is bound to repair if it is not still a turnpike road, because as it was such highway previous to the charter of the turnpike, it would remain so after the turnpike ceased to exist, as was decided in *Sherwood* v. *Weston;* but the difficulty is that the turnpike company still exists, and is by law liable for any injury caused by its being out of repair, and by the statute the town is made liable only in cases where there is no liability on any other person or corporation.

For these reasons we are of opinion that the superior court erred in its charge to the jury, and we accordingly advise that a new trial be granted.

In this opinion the other judges concurred.

New trial advised.